STEIGER et al. v. WAITE GRASS CARPET CO.

(District Court, E. D. Wisconsin. February 21, 1912.

No. 156.

1. PATENTS (§ 167*)—SCOPE—DEVICES WITHIN PRINCIPLE OF INVENTION.

A patentee, who describes and illustrates what he deems the best embodiment of his invention, is not confined to such form, but is entitled to any other form which is within the principle of operation of his invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—FEEDING DEVICE FOR GRASS TWINE MACHINE.

The Jerrems patents, No. 745,625 and No. 824,871, for feeding mechanism for grass twine machines, having as elements opposing blades, both having serrated edges and one a vibratory motion, while valid and meritorious and showing a considerable advance in the art, cannot be construed to cover a device for handling the grass stems by what is called the rotary system, which was in the prior art. As so construed, *held* not infringed by a device having a rotary member instead of the reciprocating blade of the patent and the opposing blade without serration.

In Equity. Suit by Emil H. Steiger and Thomas W. Jerrems against the Waite Grass Carpet Company. On final hearing. Decree for defendant.

Williamson & Merchant (Jas. F. Williamson, of counsel), for complainants.

Samuel W. Banning (Thomas A. Banning and Walker Banning, of counsel), for defendant.

SANBORN, District Judge. Suit on letters patent No. 745,625, applied for January 15, 1903, and No. 824,871, applied for September 21, 1905, for feeding mechanism for grass twine machines, issued to complainant Jerrems. Two claims only are in issue, being the first claim of each patent, as follows:

"1. A feeding device for a machine of the character described, comprising opposing blades or bars having co-operating serrated edges, and means for vibrating one or more of said blades or bars to produce the feeding action, substantially as decribed."

"1. In a feed device of the character described, the combination with opposing blades or bars having co-operating serrated edges, of means for vibrating one or more of the said blades to produce a feeding action, and a vibratory agitating arm arranged to act upon the grass blades in the vicinity of the point where the said blades make their entrance between the said serrations of said blades or bars, substantially as described."

The difference between the two claims consists in the additional element of the vibratory agitating arm mentioned in the second claim.

---

Defendant pleads noninfringement and anticipation by the prior art.

Both patents were granted by the Patent Office without objection by the first official action, and without the citation of any reference to the prior art. It also appears in proof that the agitating arm of the second patent was put on to the first operative machine made under the two patents.

The operation of the feeding device of the first patent is thus described in the patent specification:

"The principal feature of my invention resides in the grass-feeding device for feeding, in an even order of succession, the long wiry grass stems to the twisting devices or to other devices which are to receive them. This grass-feeding device involves co-operating blades or bars having serrated edges—that is, teeth or similar projections which co-operate to feed the grass stems one or more at a time—one or more of said feed bars or blades having a vibrating movement to produce the feeding action.

"The character $a$ indicates three vertically disposed feed blades or bars having serrated inner edges $a^1$ and beveled inner edges $a^2$ above the said serrations. At one side two of the feed blades $a$ are located parallel to each other, but spaced apart laterally, while the one co-operating blade on the other side is so located that it works in a plane passing between the co-operating blades on the other side, as best shown in Figs. 10 and 12. The co-operating beveled surfaces $a^2$ form an upwardly diverging crotch, which leads downward to the serrated edges of the feed blades and is adapted to receive the butt ends of the bunch of long grass blades, as best shown in Figs. 2 and 9, wherein the character $z$ indicates such grass blades. The said feed blades $a$ are guided for true vertical movement by slot-and-pin engagements $a^3$.

"Under the rapid but very short reciprocating motions of the co-operating feed blades or bars $a$, their serrated edges $a^1$ will work downward the butt ends of the grass blades or stems in an even order of succession, to wit, one or more for each reciprocation, but always approximately the same number for each reciprocation—and will drop the same where their ends will stand in position to pass between the co-operating feed rollers $a^{11}$. By the feed rollers said grass stems will be fed endwise into the corresponding receiving ends of the guide spouts $c^9$, and as they are drawn through these feed spouts they will be loosely twisted together under the actions of the primary twisters."

And the improved device of the second patent is thus described by the patentee:

"It will be noted that the construction and arrangement of parts are such that the toothed free end of the agitating arm 12 will move downward while the single blade on the corresponding side is being moved upward and while the two blades on the opposite side are being moved downward. This agitating arm therefore stirs up the grass blades at the bottom of the gathering crotch and prevents clogging of the grass blades at this point, and, furthermore, positively forces downward certain of the grass blades, so that they will be positively caught by the teeth of the single blade. The grass blades are thus positively started on their way downward between the serrations of the opposing blades and will be moved downward in a regular order of succession under the alternate reciprocations of the opposing blades."

Defendant's counsel give their idea of the Jerrems conception, which is repeated here for greater clearness:

"The first Jerrems patent in suit relates to a machine for feeding wisps of grass or straw from a bunch or mass in the hopper in an even order of succession. The wisps thus fed or started downward form a procession of overlapping lengths of material which are advanced by suitable means to a twisting mechanism, which serves to lash them together into a double-stranded

twine. We may confine our attention particularly to the devices for feeding forward the lengths of grass or straw and starting this procession, since the present suit concerns itself but slightly with the remaining portions of the machine. Such devices consist of a set of blades or bars having their edges *in parallelism* and very close together, and having downwardly extending teeth or serrations formed on the edges. As shown, a set consists of a pair of blades or bars which oppose a single blade or bar, with its edge intermediate the edges of the bars composing the pair. Those oppositely disposed members are mounted to have a *reverse reciprocation.* That is, the single blade or bar moves upwardly as the opposing bar moves downwardly, and vice versa. The degree of movement is sufficient to cause the teeth of one of the opposing members to move past the teeth of the other opposing member, with the result that grass or straw which is caught between the teeth will be fed or flexed downwardly by a step by step movement.

"The mass of material lies immediately above and between the diverging upper edges of the blades or bars, with the result that there will be an alternate selection and deflection of the blades of grass, first by the single bar and then by the opposing pair of bars. The grass will be caught and pulled down or segregated from the mass in this alternate manner, and thereafter it will be carried progressively downward, first by the action of one of the blades or bars, and then by the action of the others.

"Mr. See fully describes the construction and mode of operation of this Jerrems feeding mechanism on page 191 of the Record and following. After describing the structure of the device, he said (paragraphs 56 and 57):

" 'The lower portion of the blades, the portions below the crotch, have their contiguous edges provided with saw-teeth or serrations, as seen on a larger scale in Fig. 11. These teeth are formed in ripsaw fashion and present themselves downward. If the right-hand reciprocating blade goes up and the blade of grass, or possibly two blades, gets in under the top tooth, the blade of grass will be carried downward as the reciprocating blade descends, down about a sixteenth of an inch. When the metallic blade rises again, the sloping back of the tooth pushes the blade of grass over into a tooth of the left-hand member, which not only keeps the blade of grass from rising, but pushes it down as the left-hand blade descends. The blade of grass will therefore be moved downward about a sixteenth of an inch, at each descent of each metallic blade, and eventually the blade of grass will have seesawed its way down through and out from between the toothed bars; the grass blade, in its descent, being in the bite of a downwardly presenting tooth of one bar and then shifting over into the bite of a downwardly presenting tooth on the other bar, and so on in zigzag order downward. While this first blade of grass is moving downward, step by step, it is being followed by other blades of grass withdrawn in succession from the mass, so that it may be reasonably assumed that as the toothed blades are performing their reciprocating work all of the teeth contain grass; a flat, thin stream of blades of grass thus moving downward in step by step order. As the blades of grass drop from the lower ends of the toothed edges, they are carried away in overlapping order to the other portions of the twine making machine, which twist up the stranded grass, twisting two strands simultaneously and simultaneously twisting the two strands together to form a cabled twine.

" 'In the example illustrated, both of the toothed bars are given their reciprocating motions. If one of the bars was stationary, the blades of grass would be carried down in the same manner, going step by step from one tooth in one bar to the next tooth in the other bar; but the rate of feeding capacity would only be half as much as in the case of both bars being reciprocated. The patent appears to contemplate the employment of both bars or blades as reciprocating agents, or, alternatively, the employment of one stationary toothed blade and one reciprocating toothed blade.'

"Evidently the term 'agitating arm' can have no meaning or significance, unless we study the specification to learn what is agitated and how the agitation is effected. It is clear that the term 'agitating arm' is not intended to refer to a packing device which acts with substantial uniformity upon a large portion of the unorganized mass of grass in the hopper. It does not serve to *force* the grass downward by a packing movement, but merely serves

to take hold of a few of the blades in immediate proximity to the crotch, in order to carry these particular blades of grass into the bite of the serrated feeding bars.

"The characteristic feature of this agitating arm is that it acts upon small quantities of grass. It is an instrument or device peculiarly designed to act in conjunction with a special kind of feeding mechanism; that is, with co-operating serrated blades or bars having an alternate reciprocation. It is a 'mechanical packer' in a broad or generic sense, in that it assists in carrying down the mass to the point where definite and permanent segregation of successive units is effected; but it also assists in a very pronounced way in definitely effecting this selection, since it acts on only a few of the blades at a time and not on the mass as a whole, so that it, in truth and in fact, combines the functions of a selector with the functions of a packer. Neither the bar 28 nor the bar 29 of defendant's machine does this."

## Complainant's expert describes the invention as follows:

"While the Jerrems patent thus shows a complete machine for automatically producing his particular twine, claim 1 of his patent relates exclusively to the means by which the successive stalks or stems of grass are selected out from a mass and delivered in the required order of succession to the secondary feeding devices, which, as shown in that patent, consist of a pair of feeding rolls. These means for successfully selecting and feeding forward to the secondary feeding rolls the stalks or stems of grass that are to enter into the formation of this twine consist of a plurality of members, which are disposed on opposite sides of the line of travel of the stalks or stems of grass through the machine, with their opposed co-operating edges, provided with serrations or teeth. The forms of these members, under the recitation of claim 1 of the patent, may be modified in various ways to suit them to the particular location or machine in which they are to be employed. In the specific form of the invention, which has been selected for the purpose of illustration of its principle, however, these members are constructed in the form of flat plates, called in the patent 'blades' or 'bars,' with their opposed co-operating serrated or toothed edges made straight, and three of these members are employed.

"As thus constructed, these blades or bars are arranged to move vertically, with two of their number arranged a short distance apart in parallel relationship to each other, and disposed on one side of the line of travel of the grass through the machine, in which position they are connected so as to move together, while the other or third member is arranged on the opposite side of this line, in a vertical plane passing between the two members of the former or first-mentioned side.

"With the blades or bars arranged as thus explained, a relative or vibrating movement is imparted to them by appropriate means. The particular form of these operative means, under the recitation of the first claim, is unessential; it only being required thereunder that they be sufficient to impart to them the requisite relative or vibrating movement. In the specific form of the invention shown in the drawings of the patent, however, it consists of a shaft, which is mounted in suitable bearings formed in the framework of the machine, and is provided with oppositely arranged cranks, which are respectively connected to the plates or bars on the opposite side of the line of travel of the grass through the machine by suitable connecting arms, whereby as the one, on the one side of that line, is moving in one direction, those on the opposite side thereof are moving in the other direction, and vice versa.

"With the parts arranged and organized as thus explained, the stalks or stems of grass, when deposited in the crotch at the upper end of the blades or bars, will extend inward across them to the proper distance, which, in practice, is generally limited by an abutment, supported from the framework or other part of the machine; and the operation of the blades or bars upon the stalks or stems will tend to move them in a direction transverse of their length along and between the opposed and co-operating serrated or toothed edges to the place of discharge, where their butt ends are delivered to appropriate secondary feeding devices, which, in the form of the invention shown in the drawing, consists of a pair of feeding rollers, located slightly in the

rear of the blades or bars, and rotated from any appropriate part of the machine.

"Under the recitation of the first claim, no restriction is imposed upon the construction of these blades or bars, beyond the fact that they may be arranged in opposition and have co-operating serrated edges. It is not required by this recitation that the portions forming the 'crotch' for receiving and holding the stocks or stems of grass be made an integral part of them. On the contrary, under it, the part forming such crotch or receptacle may be separate therefrom; and, under it, it is not required that the co-operating, serrated edges have any particular linear form, and they may be either straight or curved or any other form that will adapt them to any particular location, or to any particular form of grass twine making machine that is provided with means for moving the stalks or stems longitudinally of their lengths after they have been deflected laterally or transversely of their length to carry their ends into engagement with the means employed for moving them longitudinally.

"By the term 'blades or bars,' I understand, from what is shown in the drawings of the Jerrems patent, is meant devices that are made in plate or bar form.

"The same is also true respecting the means made use of for vibrating one or more of said blades or bars to produce the feeding action. Under the recitation contained in the claim, no limitation is imposed upon the construction of the means for producing this result; it only being required under it that the means be of such a character as will efficiently vibrate one or more of said blades or bars to produce the feeding action. Beyond this, there. is no requirement as to their construction in the recitation, and any of the ordinary or well-known forms of motion transmitting devices, that are capable of imparting this vibrating movement to one or more of said blades or bars, to produce the feeding action, may be employed.

"From the movements imparted to the blades or bars, as shown in the drawings of the patent, I understand is meant by the term 'vibrating' any back and forth movement of one blade or bar, relatively to another, or others, or of all the bars back and forth relatively to each other or one another.

"In other words, I understand from the file wrapper and contents of this patent, 'Complainants' Exhibit 32,' that the patentee, Jerrems, was the first to produce a feeding mechanism or grass twine making machine, which operated to select and separate out, from a mass, stalks or stems of grass, and bend or deflect them transversely of their length, into engagement with devices that are adapted to move them longitudinally, by the relative movement of one or more of a plurality of serrated or toothed edges with respect to the other, or each other."

The practical form of the patented feeding devices is quite different from the form shown and described. The reciprocating motion is omitted, the two blades on one side made stationary, and the opposing blade vibrated toward and away from the others. To aid in getting the grass down to the point where it may be caught and a small portion selected, by the notches on the vibrating blade, the agitator of the second patent is employed. Then the notched portion of the vibrating bar is made semicircular convex, and the notched portion of the opposing blades semicircular concave; the edges of the three being so near each other as to handle the grass with great rapidity and efficiency. When a wisp of grass is caught in one of the notches of the vibrating convex blade, it is moved downward a step by the approaching vibration, and held in position by the opposite notches of the concave edges of the stationary blades while the retreating vibration occurs. A second downward movement rapidly succeeds the first, another wisp is caught and carried downward, while the first wisp is carried downward a second step. Thus, by a succession of quick forward and backward

movements, proper amounts of grass are fed down into engagement with the twine-forming mechanism. This form of machine comes within the general terms of the claims, having opposing blades or bars with serrated edges, and means for vibrating one of the blades to produce the feeding action.

Defendant's alleged infringing machine substitutes the notched rotary disk of the prior art for the vibrating semicircular convex blade and omits serrated edges on the opposing blade, using one instead of two. It employs the agitating arm to get the grass down to the notched disk, and an additional element consisting of a vibrating packing arm opposite the agitator with teeth as large as those on a gang saw for the purpose of forcing the grass down so it may be caught by the notches of the rotary disk and carried into the secondary rolls.

The two important functions in grass twine feeders of the type under consideration are (1) the supply feeder or grass holder, and (2) the selecting feeder. The patent supply feeder, or device for getting the grass down to the place of selection, is quite different from defendant's. Treating the agitator of the patent device as the equivalent of defendant's agitator, there is nothing in the patent drawing to suggest the toothed arm of defendant's. This addition, however, would not of itself prevent infringement. Defendant may be therefore properly regarded as an infringer so far as the first step or supply feed is concerned. The use of an additional element, by way of improvement, in no manner affects the question of infringement, because, as to this first step, defendant uses all that complainant does, and uses it in the same way.

As to the second step, made by the selecting feeder, if complainants are to be properly confined to the one form of selector shown in the drawings, there is a radical difference between the two, so great that defendant could not fairly or reasonably be held to infringe. The illustrated selecting mechanism of the patent selects the small bunches of grass just below the throat of the supply feeder or holder by purely reciprocating motions of the notched blades. In this form of the patented device the wisps of grass are selected by the notched blades, and moved down, step by step, by reciprocations of the notched blades. Defendant uses a different system, consisting of a notched rotary disk opposed by a concave member with a smooth edge. But in its practical form the patent device takes a somewhat different mode of operation. One of the blades is widened at the lower end; one edge taking the form of the segment of a circle with notches. This is made to vibrate back and forth in the arc of a circle, while the opposite blade is made with a concave edge with notches to hold the grass during the backward motion of the vibration. In defendant's device a notched disk rotates against the smooth edge of the opposing member. If therefore the patentee is confined to his illustrated form, there is no infringement.

[1] But the patentee is not so confined. He expressly says that the machine is capable of "a large range of modification within the scope" of the invention.

"An inventor must describe what he conceives to be the best mode, but he is not confined to that. If this were not so, most patents would be of little

worth. "The principle of the invention is a unit, and invariable; the modes of its embodiment in the concrete invention may be numerous, and in appearance very different from each other.'" The Paper Bag Case, 210 U. S. 405, 418, 28 Sup. Ct. 748, 52 L. Ed. 1122, 1128.

So the real question is whether defendant's selecting rotary notched disk in co-operation with the concave smooth edge of the upright plate bar is within the principle of operation of the patent, as well as within the first claim.

[2] Turning to the claim, and to complainants' present form of device, we find that the requisite elements are: (1) Opposing blades ·or bars; (2) having co-operating serrated edges; (3) means for vibrating one or more of the blades or bars to produce the feeding action. Then, looking at defendant's machine, it is at once seen that the second and third elements are wanting. There are not only no serrated edges in both of the opposing blades or bars, but no vibration. The rotary notched disk is one of the opposing blades, under fairly liberal construction; but the co-operating edge of the opposite blade is smooth, not serrated. And in addition the third element, a vibratory member is also absent. Rotation is substituted for vibration. By this change in the mode of operation, the notching or serration of the opposing blade is rendered unnecessary.

This, however, only leads to another question, which is whether the invention is broad enough to include defendant's changed construction as equivalent; in other words, whether the position of the patent is such as to entitle it to a range of equivalents broad enough to include defendant's changed form.

Lowry was the pioneer in the art of making grass twine, but his machine operates on principles totally distinct from that of Jerrems. By Lowry's selecting means small wisps of grass are caught by fingers operating longtitudinally to the grass stems, and thus fed forward into the secondary mechanism. Jerrems' operation is transverse to the position of the stems, selecting and measuring the wisps of grass by lateral deflection, and the process is quite different, as well as much more simple. No other inventor came into this particular field between Lowry and Jerrems, thus making a wide gap between them so far as the special art of feeding apparatus for grass twine machines is concerned, since Monahan and Kieren do not anticipate Jerrems, as shown in the opinion filed herewith.

There are, however, a number of patents earlier than those in suit which operate upon principles similar to defendant's machine, using what is called in the testimony the rotary system. In this class are the Howe patent, No. 430,650; Bazerque, No. 485,146; Tejada, No. 584,-655; Ellis, No. 701,183; Behel, No. 93,165; and Stephens & Carter, No. 369,479. These are machines for making cigarettes, grain binding, straw handling, and flax handling. The only one of these which is pleaded in the answer is the Howe patent for a band twister. All of them were designed to work on the rotary plan. Not one of them anticipates Jerrems, nor would they anticipate defendant if its machine was patented, nor Wessel, whose construction defendant adopted, with some change. But they are all in arts closely related, and justify de-

fendant in the position that it adopted a system of handling grass stems well known to the art prior to Jerrems, being the rotary system referred to. Its machine does what had often been done before Jerrems entered the field. It would therefore seem to follow that, as defendant's selecting device leaves out two elements of the Jerrems patents, opposing blades both having serrated edges and vibratory motion. it cannot be held to infringe in view of the considerable number of patents earlier than Jerrems which show substantially the rotary system which it adopted.

The Jerrems patents are meritorious, and a considerable step in advance; but, if construed to cover the rotary system of selection, they are so narrowed by what had gone before that the use of such system cannot be infringement.

The bill should be dismissed, with costs.