## OSHKOSH GRASS MATTING CO. v. WAITE GRASS CARPET CO.

(Circuit Court, E. D. Wisconsin. February 21, 1912.)

### No. 148.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—GRASS TWINE MACHINES.

The Monahan and Kieren patents, No. 688,789 and No. 785,070, for grass twine machines, disclose invention, being a step in advance of prior machines in the line of cheapness, simplicity, and speed, but are for improvements only, and of narrow scope. As so construed, *held* not infringed.

In Equity. Suit by the Oshkosh Grass Matting Company against the Waite Grass Carpet Company. On final hearing. Decree for defendant.

A. L. Morsell, for complainant.

Samuel W. Banning (Thomas A. Banning and Walker Banning, of counsel), for defendant.

SANBORN, District Judge. Suit for infringement of two patents, issued to Monahan and Kieren, now owned by complainant, respectively dated December 10, 1901, and March 14, 1905, and numbered 688,789 and 785,070, on machines for making grass twine for matting and rugs. The case of Steiger v. Waite Grass Carpet Co., 194 Fed. 878, decided herewith, relates to feeding devices for grass twine machines, by which the grass is brought into the machines in proper order and amount. The machines here involved take the grass so delivered and make it into twine.

The conception of the patentees was to construct a machine to make a "straight" twine, in place of twisted, as produced by the earlier Lowry machines. In order that the straight twine may be soft and pliable, it is necessary to crush the grass skin during the passage through the machine. This crushing process was done by the twisting in the Lowry devices. The patentees also sought to largely

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

increase product by higher speed, and diminish the initial expense by a simpler machine, as well as by making more twine per hour. All these objects were finally accomplished. Their commercial machine is much less expensive to build, and it makes twine at a high rate of speed. No practical machine was built under the first patent; but in 1901 a machine was produced, embodying the conceptions of parts of both patents, but omitting several of their elements. The inventors were striving for a simpler and more efficient device, which they were finally able to produce, making straight grass twine lashed together by winding, after the epidermis had been crushed.

Lowry was the pioneer in the art, and his machine is the most extensively used; the company now making twine by his process having built up an enormous business. When the third Monahan and Kieren machine appeared, infringement suits were brought by the owner of the Lowry patents, in which it was decided that the Monahan and Kieren machine did not infringe. American Grass Twine Co. v. Choate, 159 Fed. 140, 86 C. C. A. 330; Id., 159 Fed. 429, 86 C. C. A. 409. In the second opinion Judge Baker said that the inventive genius of Lowry was displayed, if at all, in modifying, combining, and adapting old elements to work successfully upon the materials used. " 'There is room for such an adapter to have only a specific patent for his particular form of adaptation, and he is not privileged to exclude others from gleaning in the same general field.' * * * Considering Lowry and the patentees of appellees' feeder 'as alike having improved on the prior art, the question is whether the specific improvements of the one actionably invade the domain of the other. The presumption from the grant of the letters patent is that there was a substantial difference between the inventions." While this language was used with respect to the initial feeding mechanism, yet it applies generally to the whole of the devices then considered. It is evident that the Lowry invention deprives the patent constructions in question of any great breadth or scope.

For the purpose of procuring material for making mats and rugs, the object of a grass twine machine is to rapidly make twine of uniform size out of wire grass, by selecting a proper amount from a mass, moving forward or advancing it, bringing it together, crushing its skin to make it more pliable or soft, and winding it with thread. The important elements involved in this case are selection, forward movement, condensation or bringing together, and compression or abrasion of the cuticle. The commercial machines of both parties each possess all these elements, operating by different means and in a different way. The claims sued on do not, however, cover the element of selection per se, because defendant's selecting device does not advance the material used, although complainant's does. The claims of the first patent here in question are:

"23. In a machine for making twine, the combination of means for forcing the material forward, means for bringing the lengths of the material close together, compression-means adapted to compress the material, after the lengths of said material are brought close together, and means, after the material is compressed, for wrapping the twine therearound.

"24. In a machine for making twine, the combination of means for forcing

the material forwardly, a funnel into which the material is received, compression-rolls adapted to receive the material therebetween, after said material leaves the funnel, and means, after the material is compressed for wrapping a twine therearound."

Ten claims of the second patent are involved, three of which follow:

"9. In a material-feeding device the combination of a frame constructed for the travel therethrough of the material to be acted upon, a rotable roll journaled in the frame, a series of revoluble devices co-operating with the roll, each revoluble device provided with a concentrically-curved edge, the said devices being so set that the material is always acted upon by one or more of the curved concentric edges, whereby said material is pressed against the roll and moved along the frame of the machine."

"17. In a material-feeding device the combination of a frame constructed for the travel therethrough of the lengths of material to be operated upon, a pair of draw-rolls arranged in line with the travel of the material and transverse of the lengths thereof, and roller means for starting or forcing the ends of successive lengths of the material between the draw-rolls, whereby said rolls serve to grasp and draw a portion of the lengths of the material."

"24. In a material-feeding device, the combination of a frame constructed for the travel therethrough of the material to be operated upon, mechanism for moving the material along the frame, one member of said mechanism being movable and adapted to act at different longitudinal portions thereof successively on the material fed into the machine, and the other member thereof having an opposing surface co-operating, and adapted, in connection with the successively-acting portions of the other member, to start the movement of the material along the frame of the machine, and a pair of draw-rolls arranged in line with the travel of the material and transverse of the lengths thereof, and adapted to receive therebetween the lengths of material moved by the material-moving mechanism, and thereby draw said lengths of material therebetween."

The compression means claimed in the first patent are necessarily friction means, in order to crush the cuticle of the grass and make it soft and pliable. Undriven rolls for this purpose are shown. In the commercial machine these rolls are wanting, and the mouth of a funnel substituted. The funnel is located at an angle to the line of draft, so that the material is drawn around this angle and the grass skin scraped off. No friction means are used by defendant, but in going through the three sets of rolls the cuticle is rubbed off, and the same result reached as in complainant's operating machine. As the grass comes to the machine the stems are covered with a hard cuticle, which makes them brittle, and, if not crushed or scraped off, renders the twine stiff and brittle. In the Lowry machine the crushing was accomplished by the twisting process, while in complainant's machine this is done by scraping the stems, just before wrapping, through the funnel nose, which is the same size as the completed twine. Defendant accomplishes this by its second pair of draw-rolls, operating before the stream of grass is finally brought together in the funnel.

Coming, now, to a comparison of the complainant's and defendant's machines it is found that the first selects and pushes forward the grass by a series of revoluble devices working longitudinally of the grass stems, while the second employs the notched disk described in the Steiger Case, which only selects, and which rotates at right an-

gles to the grass stems. This particular means of "forcing the grass forward," counted on in claim 23, is wanting in defendant's selector. To perform this same function of advancing the grass complainant's machine employs, not only its feeding device, but tail and draw-rolls and a pair of driven smooth rolls immediately next to their selector. Defendant, on the other hand, uses three pairs of draw-rolls. As to the condensing operation, complainant's spreads out the grass in a thin, wide layer, advances it through the first pair of rolls partly through the pull of the tail end draw-rolls, and then brings it together in the funnel nose by the contracting walls of the funnel, partly by gravity and partly by the draw-rolls. In defendant's machine this compacting process is almost wholly absent, for the reason that its feeding disk delivers the stems in line with the completed twine, so that only a little bringing together is necessary. This is done, not by gravity or draw-rolls at the end of the machine, but by threads on the second pair of rolls and a horizontally disposed funnel. The third step mentioned in claims 23 and 24, that of compression or crushing of the cuticle, is done in complainant's process, as already explained, by pulling the stems across the funnel nose after they have been compacted and left the funnel, while in defendant's machine this crushing process is effected by the second pair of rolls, before the grass reaches the funnel and before any condensation of the stream occurs.

Not only is it evident that the patents in suit are not entitled to a very broad construction, in view of the decisions of our own Court of Appeals in the cases referred to, but there are many machines in the prior art which employ the principle of advancing straw, wool, excelsior, flax, hemp, etc., by means of power driven rolls. In view of this situation, while I find the Monahan and Kieren patents covered a step in advance, in the line of simplicity, cheapness, and speed, yet I think defendant employs different means and a different mode of operation; such means and mode being sufficiently distinct to negative infringement, giving the patents as liberal a construction as they ought to have.

The patents should be sustained, but held not infringed.

Decree for defendant, with costs.