## COVENEY *v.* PATTULLO.

1. ATTORNEY AND CLIENT—CONTRACTS.
    A contract between an attorney and his client, made after the relationship exists, must be fair and reasonable.

2. SAME—FEE IN CRIMINAL CASE.
    Where a person, resident of Michigan, is arrested in the Klondike on a charge of obtaining money by menaces, three witnesses only being sworn on the examination, and his attorney does not appear at the arraignment, and there is no trial, but a settlement of the case is brought about by the attorney, $700 is deemed adequate compensation.

3. SAME—UNCONSCIONABLE FEE.
    In such case a mortgage of $800, given as additional compensation by the respondent while in jail, and away from home and friends, and unable to get bail, and as a condition for the attorney to secure his release, is unconscionable, and should be canceled.

Appeal from Berrien; Coolidge, J. Submitted January 8, 1902. (Docket No. 30.) Decided April 8, 1902.

. Bill by Joseph E. Coveney against James B. Pattullo to set aside a mortgage. From a decree for complainant, defendant appeals. Affirmed.

' *O'Hara & O'Hara,* for complainant.

*Edward S. Kelley* and *Lawrence C. Fyfe,* for defendant.

MOORE, J.  The bill of complaint in this cause was filed for the purpose of obtaining a decree canceling and declaring void a certain mortgage executed by complainant to defendant July 10, 1900, at Dawson, Yukon territory, on lands situate in Berrien county.  The bill alleges that the mortgage was obtained by fraud, conspiracy, duress, and was without consideration.  It is alleged that in the latter part of May, 1900, the complainant went to Dawson, in the territory of Yukon, and there met one Frank Phiscator, who had formerly lived in Berrien county; that complainant had a just cause of action for damages against Phiscator.  Upon meeting Phiscator at Dawson, the complainant and Phiscator entered into negotiations, the result of which was an agreement by Phiscator to pay complainant $7,000 in consideration of a release of all claims against him by complainant, and upon condition that complainant at once leave the Klondike region.  On the 26th of May, 1900, Phiscator paid complainant $7,000, and on the same day the money was placed in a bag, and committed to the charge of the purser of a steamboat, upon which complainant had engaged passage for the purpose of returning to the United States.  A few minutes after this, complainant was arrested by officers of the Yukon territory upon the charge of robbery, preferred by Phiscator, and lodged in jail at Dawson.  Complainant thereupon inquired for an attorney, and employed the defendant to defend him.  Complainant then had $200 with him, which Pattullo exacted, and which complainant paid him.  Pattullo informed complainant that there was no case against him.  Two days after his arrest, an ex-

amination was had before a justice, and complainant was bound over to appear at the territorial court on June 16, 1900. Pattullo did not appear before the court on the day assigned, although complainant sent for him. Complainant pleaded not guilty to the complaint, it having been amended to a charge of unlawfully obtaining money by menaces. The case was then adjourned to September 17, 1900. The complainant then became suspicious of Pattullo, and insisted upon having another attorney; and another attorney (Mr. White) was thereafter employed to act with defendant as assistant counsel. On the 8th day of July, 1900, while complainant was in jail, the defendant and White came to the jail, and informed him that they could obtain his release from imprisonment, and his liberty, upon the following conditions: (1) That complainant must plead guilty to the charge against him; (2) pay to defendant $200 in cash, complainant having already paid him and White $500; (3) sign a written statement of retraction, reciting that Phiscator had never wronged him, that his accusation against Phiscator was false, and that complainant had threatened Phiscator's life to compel him to give complainant $7,000; (4) complainant must execute a mortgage upon his farm in Berrien county, Mich., conditioned to pay Pattullo $800 more for attorney's fees; (5) complainant must assign and pay back to Phiscator the $7,000.

The bill alleges that the complainant, having then been in jail 44 days, and being anxious to regain his liberty at any expense, and unable to obtain bail, and in a state of mind in which he could be induced to agree to anything in order to obtain his liberty, consented to the conditions required, did execute the mortgage heretofore described, signed the recantation, caused the $7,000 to be paid back to Phiscator, and went into court and pleaded guilty to the charge against him. Complainant thereupon left the territory, and returned to the United States. The bill further alleges that complainant paid to the defendant $700 in cash while he was in jail at Dawson; that this was more

than the services of him and White were reasonably worth; that a charge of $1,500 is unreasonable and extortionate; and that the mortgage was not his free act and deed, but was procured through undue influence, and taking advantage of his fears and feeble condition while in imprisonment. The bill further charges that the defendant was in league with Phiscator for the purpose of defrauding him and extorting an unreasonable fee. The bill concludes with a prayer for a decree canceling the mortgage.

The answer admits the execution of the mortgage described in the bill of complaint; that the complainant signed the writing of recantation referred to, agreed to plead guilty to the charge against him, and that he did plead guilty thereto; that he paid back or caused to be paid back to Phiscator the said sum of $7,000; and that these acts and agreements on complainant's part were done and entered into as a condition of being released from prison on a suspended sentence, on complainant agreeing to leave the territory. The answer alleges, however, that these acts were done in consequence of the voluntary offer on complainant's part, and not on account of any inducement held out or restraint imposed on complainant by defendant, White, or anybody else. The answer further alleges that the services of defendant and White were reasonably worth $1,500; that complainant voluntarily offered to pay defendant $1,000 if he would obtain his release from jail; and that, on the employment of White, it was agreed by complainant to pay the further sum of $500 for attorney's services. It is further alleged that complainant himself suggested the giving of a mortgage to secure the payment of the services of defendant and White. The answer then gives a version of what occurred in court. The answer further alleges that defendant was involved in great labor in his services for the complainant; that the services of himself and Mr. White were reasonably worth $1,500; and that, considering the high prices of everything in Yukon territory, the charge was in no wise unreasonable.

The testimony of complainant was taken in open court. The testimony on the part of the defendant was taken by deposition. The circuit judge found that the making of the mortgage was as much a condition of complainant's obtaining release from jail as any other of the requirements; that it was not the free and voluntary act of complainant; that, as a matter of fact, the services of defendant and White for complainant were not reasonably worth more than $700, and that a fee of $1,500 is grossly excessive and exorbitant; that the mortgage was obtained by the undue influence of an attorney over a client, while the latter was in jail, and in a desperate frame of mind; and made a decree in accordance with the prayer of the bill. The case is brought here by appeal.

This is not a litigation between Phiscator and Coveney, in which it is necessary for us to decide whether illicit relations existed between the wife of Coveney and Phiscator, for which, upon the appearance of Coveney in the Klondike, Phiscator, without threats being made to him, was willing to cause $7,000 to be handed over to Coveney, as the latter claims, or whether Phiscator was the victim of a conspiracy and a scheme to blackmail him, and, as a result of threats made by Coveney to kill him, was induced to part first with $2,500 in Baroda, Mich., before going to the Klondike, and afterwards, for the same reason, caused to be delivered the $7,000 in the Klondike, as claimed by Phiscator. The litigation is between an attorney and client in relation to a contract made between them when the client was under arrest and in jail. The inquiry is whether the contract is so just and reasonable it ought to stand, or whether it is so unjust and unconscionable it ought to be set aside. It is said by counsel for defendant that, if a man is legally imprisoned, and to procure his discharge seals a bond or deed, this is not duress (citing cases), and that an agreement to pay a just debt, made while under legal imprisonment, cannot be avoided on the ground of duress. If it be conceded these are correct statements of the law, they do not meet the proposition

presented here.   This is not a mortgage running to the person who caused the arrest to be made, and who was seeking to collect a debt, as was the case in *Prichard* v. *Sharp*, 51 Mich. 432 (16 N. W. 798), but it is a dealing between attorney and client, which must be characterized by fairness and reasonableness if it is to stand.   In 3 Am. & Eng. Enc. Law (2d Ed.), p. 433, it is said:

"CONTRACTS FOR COMPENSATION AFTER RELATION ESTABLISHED—SUCH CONTRACTS JEALOUSLY GUARDED. An attorney cannot make use of the relation between himself and his client to extort from the latter an unjust or unreasonable contract for compensation, and a court of equity will grant relief from such oppression, and will confine the attorney to a reasonable charge for compensation,"—citing many cases.

See, also, Will. Eq. Jur. (Potter's Ed.) p. 172; *Howell* v. *Ransom*, 11 Paige, 538; *Hitchings* v. *Van Brunt*, 38 N. Y. 335.

In *Dickinson* v. *Bradford*, 59 Ala. 581 (31 Am. Rep. 23), it is said:

"The relation of an attorney to his client is one of trust and confidence, in which influence is of necessity acquired. The law does not incapacitate him from contracting with, or from becoming the recipient of the bounty of, the client. It does, however, command that all his transactions with the client shall be anxiously and jealously scrutinized, that the client may be protected from his own overweening confidence, and from the influence or ascendancy which the relation generates. 1 Story, Eq. Jur. §§ 310–314; 2 White & T. Lead. Cas. Eq. (4th Am. Ed.) 1216. There may be no trace of deceit, or of imposition, or of overreaching advantage,—no mark of actual fraud, which would justify a court in interfering for the rescission, or in refusing to compel performance, if the contract had been made between persons not sustaining a relation in which confidence was reposed and influence acquired.   The court does not interfere, or refuse interference, because there has been deceit, or imposition, or actual fraud, but, independent of such facts and ingredients, upon considerations of public policy, to prevent fraud, an abuse of confidence and influence, and to compel fidelity and unselfishness in the performance of fiduciary duties.

"In this State attorneys and solicitors are entitled to compensation for their services. Before entering on the business of the client, and suffering him to repose in them the trust and confidence of the relation, they may stipulate the measure of their compensation, and, if the client assents, the contract is as valid and as free from objection as any other contract into which he may enter. But if they assume the relation, enter on the duties, thereby inviting confidence and acquiring influence, without expressly stipulating the measure of compensation, no subsequent agreement with the client can be supported, unless it is satisfactorily shown that the compensation does not exceed a fair and just remuneration for the services which have been and which it is the duty of the attorney to render. *Lecatt* v. *Sallee,* 3 Port. 115 (29 Am. Dec. 249); *McMahan* v. *Smith,* 6 Heisk. 167; *Planters' Bank* v. *Hornberger,* 4 Coldw. 578.

"Standing, as the parties do, in a relation of confidence, which gives the attorney or solicitor an advantage over the client, the burden of proof lies on the attorney or solicitor; and, to support the contract made while the relation existed, he must show the fairness of the transaction and the adequacy of the consideration. The principle is thus stated by Judge Story:

"'But the burden of establishing its perfect fairness, adequacy, and equity is thrown upon the attorney, upon the general rule that he who bargains in a matter of advantage with a person placing a confidence in him is bound to show that a reasonable use has been made of that confidence,—a rule applying equally to all persons standing in confidential relations with each other.' 1 Story, Eq. Jur. § 311."

See, also, *Brock* v. *Barnes,* 40 Barb. 529; *Merryman* v. *Euler,* 59 Md. 588 (43 Am. Rep. 564).

With these principles of law in mind, it is well to recall certain facts which are established beyond any question. On May 26th, very soon after the $7,000 was delivered to him, Coveney was arrested thousands of miles from home, among strangers, and put in prison, where he was kept for most of the time in a cell where the conditions were very unpleasant. He sent for and retained Pattullo, paying him $200. On the 28th of the same month he was taken before the examining magistrate, but, as Phiscator did not appear, the examination was adjourned for three days.

At that time three witnesses were sworn, and Coveney was held for trial at the territorial court. On June 16th he was taken before that court for arraignment. He says he sent for his counsel. Whatever the fact may be as to that, his counsel was not present. He was arraigned, pleaded not guilty, and his case set for trial September 17th, in the absence of counsel. Complainant says, because of the failure of his counsel to appear when he was arraigned, Mr. White was called into the case. Whether that was the reason or not, Mr. White was in fact brought in, and a further payment was made. July 7th a still further payment was made, making in all $700, which was paid in cash. There is some dispute as to whether the mortgage was signed on the 10th of July, or a day or two earlier; but not later than the 10th of July a mortgage for $800 was given, and on the same day Mr. Coveney, at least with the consent of his counsel, entered a plea of guilty to the complaint lodged against him by Phiscator, made a recantation in writing reciting that his charge against Phiscator was false, and that he obtained the $7,000 through threats and blackmail, and agreed to return to Phiscator the $7,000, and also agreed to leave the country at once. We do not think there is any evidence to connect defendant with the arrest of complainant, or with any conspiracy with Phiscator; but we do think the evidence shows he has been liberally paid for all he did, and that taking the mortgage under the circumstances was unconscionable, and that it ought not to be enforced.

The decree is affirmed, with costs.

HOOKER, C. J., and MONTGOMERY, J., concurred. LONG and GRANT, JJ., did not sit.