BOYLE *v.* WATERS.

1. CARRIERS—DUTY TO PASSENGERS—ALIGHTING FROM TRAIN.
    A passenger is entitled to protection as such by the carrier until she has alighted and had reasonable opportunity to get away from the railroad premises in the direction ordinarily taken.

2. SAME — INJURIES TO PASSENGERS — LIABILITY FOR INJURIES — FAILURE TO LIGHT PREMISES.
    The mere fact that a passenger with a through ticket necessitating making a connection with another railroad at a junction point is beyond the premises of the initial carrier and on the premises of the connecting carrier does not relieve the initial carrier from · liability for injury while pursuing her way on an unlighted cross-walk constructed between the stations of the respective carriers and used in the transfer of passengers between the stations.

3. SAME—PERSONAL INJURIES—QUESTION FOR JURY.
    In an action by the passenger against both carriers to recover for personal injuries due to being struck by a train of the connecting carrier while on the cross-walk on the latter's premises it was a question for the jury whether it was necessary to light the walk so as to make it reasonably safe for passage and whether such duty had been discharged.

4. SAME—DUTY TO PASSENGERS.
    The duty rested upon both railroads to see that the cross-walk was properly lighted for passengers using it between the stations, irrespective of any agreement between the railroads.

5. SAME—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.
    Evidence *held,* to present a jury question whether the initial carrier was negligent in failing to inform plaintiff that she would have to cross the track of the connecting carrier before reaching the latter's station, and in failing to warn her of an approaching train.

6. SAME.
    Evidence *held,* to present a jury question as to whether the connecting carrier was negligent in approaching the

cross-walk with its train without maintaining a proper lookout and giving due and timely warning of its approach.

7. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Plaintiff was not guilty of contributory negligence in failing to observe a train of the connecting carrier. where, when she started over the cross-walk used for the transfer of passengers under directions from the initial carrier's agent, her view of the oncoming train was obscured by a large pile of snow and she did not know that a train was due or approaching at the time, and it also appeared that the walk was laid flush with the rails and she did not discover the track, upon approaching it, because of the darkness, that the train came into the station quietly, without warning, and that the headlight of the engine was very dim.

8. SAME — FAILURE TO LIGHT PREMISES — PERSONAL INJURIES — PROXIMATE CAUSE.

The failure to light the cross-walk was the proximate cause of plaintiff's injuries, since the passenger had not had opportunity to get away from the premises of the initial carrier in the way ordinarily taken.

9. SAME.

Where two railroad companies are charged with the joint duty of maintaining a cross-walk between their respective stations, and the neglect to properly light the cross-walk resulted in the injury to a passenger of one railroad using the cross-walk to take a train at the station of the other railroad by a train of the latter, a recovery may be had against both companies.

10. SAME—SERVICE OF PROCESS—JURISDICTION.

When two railroads are charged with torts contributing to the injury of a passenger using a cross-walk between the respective stations, the service of process on one railroad outside the county in which the trial is had after due service on the other railroad in the latter county is proper and confers jurisdiction on the court.

Error to Kent; Perkins, J. Submitted January 16, 1917. (Docket No. 45.) Decided December 28, 1917.

Case by Lillian Boyle against Dudley E. Waters and Paul H. King, receivers of the Pere Marquette Rail-

road Company, and the Ann Arbor Railroad Company for personal injuries. Judgment for plaintiff. Defendants bring error. Affirmed.

*Gustavus Ohlinger* and *Edgar H. Johnson* (*A. L. Smith,* of counsel), for appellant Ann Arbor Railroad Company.

*Parker, Shields & Brown* (*Charles E. Ward,* of counsel), for appellants Waters and King.

*Hatch, McAllister & Raymond,* for appellee.

Bird, J. Defendants' railway lines intersect and cross at Thompsonville. The Ann Arbor line at that point extends nearly north and south. The Pere Marquette crosses the Ann Arbor in a southwesterly course at an angle of about 45 degrees. The Ann Arbor station is located on the east side of its track near the intersection and target house. The Pere Marquette station is situated on the west side of its track nearly opposite the Ann Arbor station. The defendants exchange passenger traffic at this point. To accommodate its respective passengers defendants built a walk across the angle between the two stations. This walk is about 100 feet in length and has been in use for 18 years.

On the 8th day of March, 1913, plaintiff became a passenger of the Ann Arbor Railroad at Cadillac with through transportation to Charlevoix via Pere Marquette from Thompsonville. She arrived at Thompsonville on the Ann Arbor train at 6:15 o'clock in the evening. It was dark, and, being unacquainted with the situation, she informed the agent that she was going to Charlevoix, and inquired where she would take the train. He stepped to the door, called her attention to a light observable through a window of the Pere Marquette station nearly opposite, and directed her to go over the crosswalk to the light. She

went to the waiting room, secured her baggage, and followed the way pointed out. When within a few feet of the Pere Marquette station platform she was struck by a belated south-bound Pere Marquette passenger train and carried on the pilot beam of the locomotive for something like 100 feet, finally falling to the ground just before the train stopped. Her left foot was severed at the ankle joint, and the bones of her leg were so badly crushed that amputation four inches above the knee was necessary, and she was otherwise seriously injured.

The negligence charged against the Ann Arbor Railroad was the failure of the agent to inform plaintiff that she would have to cross the Pere Marquette track before she reached the station, and its failure to warn her of the approaching south-bound train which was then standing north of the target. The Pere Marquette Railroad was charged with negligence in running the south-bound train into the station without giving sufficient warning of the approach, and with failing to maintain a proper lookout as it approached the crosswalk to avoid colliding with persons thereon. The negligence charged against both defendants was their failure to properly light the passageway so as to make it safe. The trial resulted in a judgment for plaintiff, and both defendants assign error.

1. Plaintiff was a passenger of the Ann Arbor Railroad from Cadillac to Thompsonville, and she was entitled to protection as such until she had alighted and had reasonable opportunity to get away from the company's premises in the direction ordinarily taken. *Burnham* v. *Railway Co.*, 91 Mich. 523 (52 N. W. 14); *Collins* v. *Railway Co.*, 80 Mich. 390 (45 N. W. 178); *Cross* v. *Railway Co.*, 69 Mich. 363 (37 N. W. 361, 13 Am. St. Rep. 399).

There is no controversy between counsel as to this

general rule, but their differences arise the moment an attempt is made to apply the rule to the facts of the case. Counsel for the Ann Arbor insist that at the time plaintiff was injured she was outside the protection of this rule, because she was on the premises of the Pere Marquette Railroad Company. We cannot agree with this contention. The testimony shows that the land over which the crosswalk was constructed belonged to both companies; that each company constructed half of the walk for the common purpose of facilitating the passage of their passengers from one station to the other. There was not only an implied invitation to plaintiff to use this way, but an express direction by the Ann Arbor agent to use it in reaching the premises of the connecting carrier. She therefore had the right to assume that it was reasonably safe for such use, and if the failure to properly light it made it unsafe, the Ann Arbor Company, as well as the Pere Marquette Company, would be liable. But counsel insist that the question must turn upon whether she was still upon its premises. It is true she had just stepped off from its premises, but she was still using the way she was directed to use.

The mere fact that plaintiff had gotten beyond the Ann Arbor premises would not relieve that company from liability if she were still pursuing the way which the Ann Arbor Company had assisted in constructing for her convenience, and one which was in general use for the transfer of its passengers. *Cotant* v. *Railway Co.*, 125 Iowa, 46 (99 N. W. 115, 69 L. R. A. 982) ; *Watson* v. *Oxanna Land Co.*, 92 Ala. 320 (8 South. 770) ; *Alabama, etc., R. Co.* v. *Godfrey*, 156 Ala. 202 (47 South. 185, 130 Am. St. Rep. 76) ; *Haselton* v. *Railway*, 71 N. H. 589 (53 Atl. 1016) ; *Tobin* v. *Railroad Co.*, 59 Me. 183 (8 Am. Rep. 415) ; *Skottowe* v. *Railway Co.*, 22 Or. 430 (30 Pac. 222, 16 L. R. A. 593) ; *Louisville, etc., R. Co.* v. *Lucas*, 119 Ind. 583 (21 N.

E. 968, 6 L. R. A. 193). All of these cases support the proposition that a carrier may be made liable for the injury of passengers beyond its own premises.

In the last case cited a platform was used by the Monon Railway and the Pennsylvania Railway upon which to transfer passengers. The plaintiff was injured by falling into a hole in the walk on the premises of the Pennsylvania line. In affirming a judgment against the Monon Railway it was said in part:

"It was the duty of the appellant to keep the platform which it used in conjunction with the Pennsylvania Company in a safe condition. The situation of the platform and the manner of its construction were such as to make it the duty of the appellant to see that it was safe; for it was bound to know that, if it became unsafe, the lives and limbs of its passengers were put in peril. * * * The negligence of the appellant in leaving a platform, constructed as was the one described in the verdict, in a dangerous condition, without lights or guards, might have been expected to bring upon a passenger just such an injury as the plaintiff actually received, and the appellant was in fault for not foreseeing and guarding against what did occur. The consequences which resulted were the natural·consequences of the appellant's breach of duty, and it must answer to the injured person."

We think it was a fair question for the jury under all the circumstances to say whether it was necessary to light the walk to make it reasonably safe for passage, and, if necessary, whether defendants had discharged that duty.

Counsel for the Ann Arbor further insist that it is not liable because it was the duty of the Pere Marquette to light the walk; that it had electric lights under the eaves of its station, one of which was nearly opposite this walk, which served to light it, and that it had no notice that the Pere Marquette did not intend to do as it had done in the past. If this way were constructed and maintained for the purpose of trans-

ferring passengers from one station to the other, as the proof shows that it was, the duty rested upon both defendants to see that the way was properly lighted. If there were a failure to light it on the night in question, then both defendants would be liable to plaintiff for such neglect. If the defendants had any arrangement between themselves that the Pere Marquette should light the way, and it neglected to do so, and injury resulted, that is a matter to be disposed of by defendants between themselves.

2. We think the trial court was in no error in submitting to the jury the question whether the Ann Arbor Railroad Company was guilty of negligence in failing to inform plaintiff of the fact that she would be obliged to cross a railroad track before reaching the Pere Marquette station, and in failing to warn her of the approaching train. Neither do we think the court was in error in submitting to the jury the question whether the Pere Marquette Railroad was negligent in approaching the crosswalk with its train without maintaining a proper lookout and giving due and timely warning of its approach. There was much conflicting testimony bearing on the manner of its approach.

3. Both defendants insist that plaintiff was guilty of contributory negligence in failing to discover the train, and for that reason they should have had a directed verdict. The conclusion of the jury upon this question finds justification in the fact that when plaintiff started across the walk her view of the incoming train was partially or wholly obscured by a large pile of snow and the target house; that she was not informed and did not know that any train was due or approaching at that time; that the board walk was laid flush with the rails, and by reason of the darkness she did not discover the track as she approached it; that the train came into the station quietly, without

giving the usual warnings; and that the headlight of the locomotive was so dim that it might easily have been mistaken for a switch light.

4. Defendants' contention that the failure to light the way was not the proximate cause of the injury is sufficiently answered by what this court said in *Burnham* v. *Railway Co., supra:*

"The duty of the defendant did not cease the moment plaintiff alighted from the train, nor until plaintiff had a reasonable opportunity to get away from the company's premises in the direction ordinarily taken. Until that point was reached and passed, any dangerous obstruction causing the injury was proximate under the declaration."

5. It is contended by the Ann Arbor that plaintiff should have been compelled at the outset of the trial to elect against which defendant she would proceed. The reason offered is that the declaration did not allege nor prove a joint duty. We know of no rule which would compel plaintiff to allege a joint duty. If defendants were charged with several duties, and the neglect of them concurred to injure plaintiff, suit might be maintained and recovery had against both. We think the declaration, however, reasonably construed, does charge a joint duty in failing to light the crosswalk.

6. Both defendants having been charged with' torts which contributed to plaintiff's injury, the service of process on the Ann Arbor Railroad outside of Kent county after due service was made upon the receivers of the Pere Marquette in Kent county was proper, and conferred jurisdiction upon the court. Act No. 225, Pub. Acts 1901 (3 Comp. Laws 1915, § 12430). Several other assignments are answered by these conclusions. The remaining ones we think are not well taken.

The judgment is affirmed.

KUHN, C. J., and STONE, MOORE, and BROOKE, JJ., concurred with BIRD, J.

OSTRANDER, J. (*concurring specially*). Matter, including some legal principles, I think much too broadly stated in the opinion of my Brother BIRD in the fifth subdivision thereof, especially in view of the facts of the particular case.

The plaintiff was injured while following a way leading from the premises of one defendant to the premises of the other, a way constructed partly upon the premises of each and the only way provided for leaving the premises of the defendant Ann Arbor Railroad Company. The way was not defective, but it led across railroad tracks and trains passed over it. Testimony for the plaintiff warranted the jury in finding that to a stranger, passing over the way and the tracks in the darkness, the danger of which the tracks themselves were a notice and warning could not be apprehended, and that the way ought to have been lighted to make it reasonably safe at the time and under the circumstances disclosed. The duty to sufficiently light the way was one which each defendant owed to the plaintiff. *Peters* v. *Railway Co.*, 178 Mich. 481 (144 N. W. 827). It is alleged in the declaration to be the several duty of each defendant to light the way. The testimony of the plaintiff tends to prove that the way was not lighted. This duty owed by each defendant arose, in part, from the fact that danger from passing trains was to be apprehended, a danger which would not be perceived by a stranger using the way in darkness. The thing which should have been apprehended occurred. The negligence of one defendant, concurring with the breach of the duty owed by both, caused the injury complained about. During the delivery of the charge the following occurred:

"*Mr. Ohlinger:* May it please your honor, during

the argument I brought your honor's attention to the question of the separate verdict for or against either of the companies separately, and, as I understand it, this is being submitted simply on one verdict against two companies jointly, and in view of that I would like to show that I make a request for a separate verdict as to each railroad.

"*The Court:* On this question of separate verdicts, in case the jury should so find, that involves this question: That the joint liability to maintain the lights over this walk, if the verdict is for the plaintiff, a joint verdict follows of necessity, but, if the jury should find that the walk was lighted sufficiently light, and yet under the circumstances the plaintiff was not guilty of contributory negligence in passing over this track, and should further find that the lookout, namely, the fireman, was not sufficiently observant of his duty and neglected that duty to the extent of failing to see the plaintiff in the danger she was in, it may be that under those circumstances the verdict would be against only one company, and not against the Ann Arbor. What have you to say about that, gentlemen? I had not quite thought of that proposition before, but, after analyzing the case, I saw that probably or possibly that that may be something that should be submitted to the jury. I think I will instruct you, gentlemen, inasmuch as counsel on both sides keep still about it.

"*Mr. Ohlinger:* I don't know that you want to hear from me again.

"*The Court:* No; you have presented your point. I directed my remark to the plaintiff.

"*Mr. Ward:* I did not intend to say anything, because it would take some time, but I understood your honor has instructed the jury, if there was a proper lookout on the train—

"*The Court:* There was a proper lookout on the train, but whether he could have seen the plaintiff, even though he was performing his duty as lookout, will depend on the degree of darkness or light there.

"*Mr. Ward:* Well, we won't say so now. It is a peculiar situation that we were in, between the light of the engine and—

"*The Court:* That is a question for the jury to de-

termine. I think I have sufficiently instructed them. I think I will also instruct you, gentlemen, that if you should find that the plaintiff received her injuries by reason of the negligence of the lookout to observe her and stop the engine in time to save her, and you should further find that she was not guilty of contributory negligence under the instructions I have given you and in crossing that track, that that would be the negligence of the Pere Marquette Railroad Company alone, and your verdict would be against that company alone, should you find for the plaintiff, and no cause of action as to the Ann Arbor Railroad Company.

"On the other hand, if your verdict is based upon the question of lights and where the duty to maintain them was mutual and concurrent, then your verdict should be as against both railroad companies, if you find for the plaintiff."

In view of this instruction, the last word given to the jury, I am of opinion that the verdict and judgment against both defendants may be sustained, upon the theory that the jury found a breach of the duty owed by both defendants, and that it was the proximate cause of the injury.

STONE, STEERE, and FELLOWS, JJ., concurred with OSTRANDER, J.