### BOYLE *v.* WATERS.

1. ATTORNEY AND CLIENT — CONTRACTS — EVIDENCE — QUESTION OF FACT.

   Where a contract of employment between a law firm and their client was terminated by the client's brother, acting as her attorney, at the conclusion of the trial in the circuit court, and a new contract entered into for carrying the case to the Supreme Court, contradictory testimony as to the terms of the new contract, *held*, to present a question of fact for the jury. MOORE, FELLOWS, and KUHN, JJ., dissenting.

2. EVIDENCE—PAROL CONTRACT—SELF-SERVING STATEMENT—ADMISSIBILITY.

   In proceedings by a law firm to establish a lien on the proceeds of a judgment for services rendered in said case in pursuance of an oral agreement between said firm and client's brother, acting as her attorney, a memorandum

of the agreement, made by one of the members of said firm, was inadmissible in evidence for the purpose of proving the terms of said contract. Per OSTRANDER, MOORE, STEERE, BROOKE, and STONE, JJ. BIRD, C. J., dissenting.

Error to Kent; Brown, J. Submitted January 28, 1919. (Docket No. 24.) Decided July 17, 1919. Rehearing denied October 6, 1919.

Case by Lillian Boyle against Dudley E. Waters and another, receivers of the Pere Marquette Railroad Company, and the Ann Arbor Railroad Company for personal injuries: On petition of Reuben Hatch and others, copartners as Hatch, McAllister & Raymond, to establish a lien for services. Judgment for petitioners. Plaintiff brings error. Reversed.

*Wykes & Averill* (*William K. Clute*, of counsel), for appellant.

*Hatch, McAllister & Raymond* (*Myron H. Walker*, of counsel), *in pro. per.*

KUHN, J. This litigation results from a controversy between Hatch, McAllister & Raymond, a firm of attorneys of Grand Rapids, Michigan, and their former client, Lillian Boyle, concerning their charges for services while they were under retainer and employed as her attorneys, for that portion of their work in the litigation which related to the bill of exceptions, briefing, and arguing her case in this court. The case is found reported under the title of *Boyle* v. *Waters*, in 199 Mich. 478. The principal suit arose out of a personal injury which Miss Boyle sustained upon the railroads of the defendant companies. Through her brother and attorney, who was the head of the firm of Boyle, Mott & Miller, of Chicago, Illinois, she retained the firm of Hatch, McAllister & Raymond, of Grand Rapids, as attorneys to assist Mr. Boyle and to represent her in the prosecution and conduct of said litiga-

tion to a final judgment. At the time that this agreement was made for services, it appears undisputed that it was agreed that the services of Hatch, McAllister & Raymond were to be paid for at the rate of $25 a day for services out of court and $50 a day for services in court, and they were also to be repaid whatever moneys were paid out for incidental expenses. This schedule of fees was not contingent, but was to be paid absolutely whatever outcome there might be to the litigation. The case was brought on for trial and resulted in a verdict of $15,000 for the plaintiff. On the trial at Grand Rapids Miss Boyle was represented by the firm of Hatch, McAllister & Raymond and also by Mr. Edward Boyle and Mr. Marion G. Paul, of Thompsonville, who had also been retained as counsel. The day after the verdict was returned, Mr. Boyle went to the office of Hatch, McAllister & Raymond to talk over further proceedings in the case and to settle with them for the services that had been rendered up to date. In the conversation which Mr. McAllister had with Mr. Boyle at that time some disagreement arose as to this settlement, and it is the claim of Mr. Boyle that Mr. McAllister threatened to withdraw from further participation in the case unless more than the specific original contract rate was allowed for services up to that time. The differences were referred to Mr. Hatch, who acknowledged that the firm should carry out the agreement it made and stay in the case, and a settlement for services to date upon the contract basis was thereupon made. As to what then occurred between Mr. Boyle and Mr. Hatch as to compensation for services thereafter to be rendered there is a sharp conflict in the testimony. It is the claim of Mr. Boyle that he requested Mr. Hatch to name an amount that would cover the services of the petitioners herein in connection with the preparation and hearing of the case

in the Supreme Court, and that thereupon Mr. Hatch made him the proposition to do the work upon the bill of exceptions and in the Supreme Court for $350 and that he accepted this proposition and agreed to pay $150 additional for services, in case the judgment of the court below was affirmed. That he immediately left Mr. Hatch's office and went directly to the Morton hotel where the plaintiff herein was staying, and informed her of this arrangement, which he claims she assented to. Mr. Hatch, on the other hand, claims that the agreement was that they were to receive $100 a day for all services in the settlement of the bill of exceptions and brief work and for all work in the Supreme Court, and in case the plaintiff received the amount of the judgment, that they were to receive the amount of $350 additional. The result on the appeal being an affirmance of the judgment, a payment thereon was attempted by the Ann Arbor Railroad Company, one of the defendants, in the form of a check or draft for $2,500, payable to the order of the plaintiff, Lillian Boyle. This was received by Hatch, McAllister & Raymond about March 7, 1918, and without any express authority from their client, they indorsed upon the check or draft her name, thus placing themselves in possession of the funds, and thereafter, on March 13, 1918, they rendered a bill for services on the basis of $100 per day and expenses, amounting to $2,232.21, covering their services for settling the bill of exceptions and briefing and arguing the case in the Supreme Court, and sent to Mr. Boyle at Chicago a letter enclosing a check for the balance of the $2,500, amounting to $267.79. Mr. Boyle immediately came to Grand Rapids, disputing the settlement on that basis, and insisted upon settlement being made upon the contract as he claims it was made. In the controversy which ensued between Mr. Hatch and Mr. Boyle, it is the claim of Mr. Hatch that he told Mr.

Boyle of the agreement claimed to have been made by
him and that he read to him a memorandum which he
claimed he made on the day of the agreement in his
journal, which was admitted in evidence upon the re-
buttal examination of Mr. Hatch, after he and Mr.
Boyle had testified as to what took place, over strenu-
ous exceptions of counsel for the defendant, and which
memorandum read as follows:

"Agreement is that for all work for Supreme Court,
including settlement of bill of exceptions and brief
work, we are to have at the rate of $100 a day; at
the end, when plaintiff gets her money, if she does,
we are to have $350 in addition; the per diem is pay-
able whether we win or lose."

The Ann Arbor Railroad Company refused to honor
the check or draft because of the insufficient indorse-
ment, and the petitioners were obliged to reimburse
the moneys advanced on the check. Thereupon this
petition was filed for an order establishing a lien on
the $15,000 judgment for the amount of the claim for
services of $2,232.21. A tender was made by the de-
fendant to the petitioners of $582.21, which is the
amount claimed to be due the petitioners in accord-
ance with the contract testified to by Mr. Boyle, and
$10 for services in the taxation of costs in the circuit
court, and other additional expenses, and at the con-
clusion of petitioners' testimony counsel for the de-
fendant in the petition demurred to the evidence and
asked the court to direct a verdict of no cause of
action. The issues were, however, submitted to the
jury and resulted in a verdict in favor of the peti-
tioners in the full amount of their claim. Whether
or not the learned trial judge erred in not directing a
verdict as requested is the first question which merits
our attention.

The original contract arrangement for services,
made by Mr. Boyle, who was acting as attorney for

his sister, with the counsel he retained in Grand Rapids, was, as has been stated, for the sum of $25 per day out of court and $50 per day in court for all services that would be rendered in the particular suit in which the plaintiff was at that time interested. So that, in the absence of any change in the contract, it was a contract which bound the petitioners to perform the services at the agreed compensation during the conduct of the entire litigation and, it seems to us, did not cease until the judgment became final and became enforced, and therefore continued through any proceedings which might be brought to reverse it. See 6 Corpus Juris, p. 652, § 161; note in 76 Am. Dec. p. 259; *Brown* v. *Arnold*, 67 C. C. A. 125, 131 Fed. 723; *Berthold* v. *Fox*, 21 Minn. 51, at p. 53; *Graves* v. *Graham*, 43 N. Y. Supp. 508. The rule seems to be that an attorney cannot withdraw from litigation without the consent of his client and by leave of the court, as the relation does not terminate formally until there has been a withdrawal of record. See 6 Corpus Juris, p. 673, § 186. Therefore it conclusively appears that at the time the alleged second agreement was made the relationship of attorney and client existed between the petitioners and the defendant, and any contract that petitioners claim was entered into between them and their client should and does receive from the courts most careful scrutiny. *Gates* v. *McLaulin*, 199 Mich. 438; *Coveney* v. *Pattullo*, 130 Mich. 275. In the construction of a contract of this kind, made while the fiduciary relationship exists, we have in mind, and before us, the rule announced by the New York court of appeals in *Re Howell*, 215 N. Y. 466 (109 N. E. 572), where the general rule was thus stated:

"In this State it has been held that as to contracts made between the attorney and his client, subsequent to the employment, which are beneficial to the attor-

ney, it is incumbent upon the latter to show that the provisions are fair and reasonable, and were fully known and understood by the client"—citing cases.

The rule is thus stated in 2 Ruling Case Law, p. 1038 (part of § 120):

"A number of decisions take the view that not only are contracts between an attorney and his client as to compensation made after the commencement of the relation to be closely scrutinized, but that such contracts are presumptively invalid on the ground of fraud, and that the burden of proof is on the attorney to show the fairness of the transaction, in that the compensation provided for does not exceed a fair and reasonable remuneration for the services which have been rendered or which it is his duty to render. The attorney must show that the contract was free from all fraud, undue influence, and exorbitancy of demand, and it is usually held that by way of establishing its fairness the attorney should show that the contract was entered into by the client freely and with a full understanding as to his rights and as to the effect of the instrument. and that he gave his client full information and disinterested advice."

It is the contention of counsel for petitioners that Mr. Boyle in his relation to the making of this contract was acting as the *alter ego* of his sister, the defendant in this petition, and that she is chargeable with all the knowledge possessed by her brother, as special counsel, with whom the contract in question, it is claimed, was made on her behalf. With this, however, we cannot agree, as we are inclined to the view, and think it is a just conclusion, that the rule contended for by the counsel for petitioners should not be held to apply where the fiduciary relation existing between attorney and client is established and a new contract is claimed to have been made, beneficial to the attorney. The duty rested upon the petitioners, not only to show that the provisions of the new contract were fair and reasonable, but that they were

fully known and understood by the client. No testimony was offered to show that the minds of the parties, that is, of the petitioners and their client, met as to the terms of this new contract. The general rule as to the employment of an attorney through an agent is thus stated in 6 Corpus Juris, p. 732, § 303:

"Where the employment is arranged through an agent, a client's liability depends on the authority of the agent to bind him in that respect, and the scope of the agent's authority depends on the rules and principles of the law of agency."

And in the following section it is said:

"As an attorney has no implied power, under a general retainer, to employ associate counsel, the client is not liable to counsel so employed, unless he has authorized the employment, or has ratified the act of the original attorney in employing assistance, with full knowledge of the fact that the attorney so employed is to look to him for compensation."

In this case the original employment of the associate counsel is not contested. If the contract was not authorized in advance, it has been ratified. But if an attorney has no implied power to employ counsel at the expense of the client, much less would he have any implied authority to alter a contract of employment of associate counsel already entered into by granting him a greater fee than he had originally agreed to accept for the same work. Hence, petitioners must show, not merely that Mr. Boyle was authorized to employ counsel at the time the original agreement was made, but that he had a *separate and distinct authorization* to increase the rate of compensation at a time when counsel were legally bound to perform the services at the old rate, or, failing in this, that the client ratified the new contract, with full knowledge of its terms and of her rights in the situation which had developed. There is no testimony

whatever showing such special authorization. In fact, the testimony negatives it, because it shows clearly that when Mr. Boyle went over to pay Hatch, McAllister & Raymond for services already rendered, he was taken by surprise when the demand was made for greater compensation, which led to the arrangement whose terms are now in dispute. Whatever he did at that time, therefore, was clearly done upon his own initiative, and before it could bind his sister, it was necessary to obtain her ratification. The testimony is uncontradicted that he did not notify her of any such contract as petitioners claim was made. Mr. Boyle testified that he told his sister what he claims was agreed upon at this conversation as the new contract, which was clearly not the contract which is here insisted upon and sought to be enforced. We think the establishment of this rule places no burden upon counsel, for the reason that, having entered upon the contract of service, if they sought to change it, it was a very simple thing to bring notice of the change to the client by writing a short memorandum of the proposed change and mailing it or sending it to Miss Boyle. We are firmly of the opinion that the petitioners have not met the burden which rested upon them to show the new contract which they seek hereby to enforce, and having failed to do so, we think cannot recover thereon, and that their right to compensation must be determined by their first contract of hire. Upon the record as made it was the duty of the trial judge to direct that a lien for the services of the petitioners should attach to the judgment for the amount thereof as computed under the first contract of hire, which, according to the computation made in the brief of appellant, amounted to $487.50, and adding thereto $72.21, expenses, and $10 for services in taxing costs in the circuit court, would make the total amount the petitioners were entitled to, $569.71, which is $12.50

less than the amount which was tendered by the defendant in court.

In view of this conclusion, it will be unnecessary for us to discuss the other interesting questions raised on this appeal concerning the admissibility of the self-serving statement made by Mr. Hatch in his journal and the other questions raised by appellant's counsel in their brief.

The judgment must be reversed and a new trial granted, with costs to the appellant.

MOORE and FELLOWS, JJ., concurred with KUHN, J.

OSTRANDER, J. Not questioning any of the principles stated in the opinion of Brother KUHN, I am impressed that their application is questionable. For an attorney to deal with a client is one thing, but when the client employs or uses her own attorney, and her brother at that, to negotiate for her, to make her bargain with her other attorneys, then I think the rule stated ought to be modified. In my judgment, the case presents a question of fact. Mr. Boyle was not deceived, nor was he imposed upon. He was entirely conscious of the rights of his sister in the premises. If he ended, by payment, one contract for the services of petitioners and proceeded then to make another contract, there can be no question of his perfect right to do so and none of his sister's responsibility. He was doing what his sister had turned over to him to do. Petitioners were not dealing with her, but with her attorney. The law of agency need not bother us. Boyle was attorney for his sister—represented her, by her consent. Did he make a new bargain? He says he did and informed his sister about it. Was it the bargain which petitioners say was made? That is the question and, as affecting it, I am impressed that the memorandum made by Hatch was incompetent evidence. The trial court required

the jury to find that the old or first employment ended and that before a new bargain was made. There is testimony tending to prove it. Because the Hatch memorandum was admitted in evidence, judgment should be reversed and a new trial granted, with costs to appellant.

STEERE, BROOKE, and STONE, JJ., concurred with OSTRANDER, J.

MOORE, J. I agree with Justice OSTRANDER that the memorandum was inadmissible.

BIRD, C. J. (*dissenting*). I am in accord with the conclusions reached by Mr. Justice OSTRANDER in this case save in this respect: I think the memorandum made by Judge Hatch was competent, and therefore admissible in evidence, in view of the conditions existing at the time of its admission. Jones on Evidence, §§ 171, 293, 294.

I am of the opinion that the judgment of the trial court should be affirmed.