578 A.2d 1196

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Joseph Benson HARLAN and Jac Edward Knust.

Misc. Docket (Subtitle BV), No. 17, Sept. Term, 1989.

Court of Appeals of Maryland.

Sept. 12, 1990.

Motion for Reconsideration Denied
Oct. 25, 1990.

Robert P. Conrad, Asst. Bar Counsel, for the Attorney Grievance Comm'n of Maryland, for petitioner.

Philip M. Andrews, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS * and CHASANOW, JJ.

---

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

RODOWSKY, Judge.

This bar disciplinary matter concerns a disbursement by the Respondents for their client, out of funds recovered in a tort action, to a creditor of the client. Respondents requested, received and retained a "fee" of one-third of the disbursement, without the knowledge or consent of the client.

The Attorney Grievance Commission filed charges against Joseph B. Harlan (Harlan) and Jac E. Knust (Knust), alleging violations of DR 1–102(A)(4), DR 2–106(A), DR 5–101(A), DR 5–107(A)(1) and DR 7–101(A)(1) and (3). *See* former Maryland Rule 1230, Appendix F, Code of Professional Responsibility, which governed conduct prior to January 1, 1987.[1] We referred the charges to Judge

---

1. The above-cited disciplinary rules read:
   "DR 1–102 Misconduct.
   (A) A lawyer shall not:
      (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."
   "DR 2–106 Fees for Legal Services.
   (A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."
   "DR 5–101 Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.
   (A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."
   "DR 5–107 Avoiding Influence by Others Than the Client.
   (A) Except with the consent of his client after full disclosure, a lawyer shall not:
      (1) Accept compensation for his legal services from one other than his client."
   "DR 7–101 Representing a Client Zealously.
   (A) A lawyer shall not intentionally:
      (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
   . . . .

Leonard S. Jacobson of the Circuit Court for Baltimore County for hearing and report. Counsel for the parties furnished Judge Jacobson with a written stipulation of facts and also filed in the record for Judge Jacobson's consideration the transcript of the hearing before the inquiry panel. See Maryland Rules, Ch. 1100, Subtitle BV, Rule BV6 d. The Respondents also produced seven character witnesses. Judge Jacobson reported to this Court as his findings of fact the stipulation of facts filed with him by counsel. Based on those findings, Judge Jacobson concluded, as a matter of law, that Respondents violated DR 5–107 but that they had not committed any of the other violations charged.

Respondents take no exception to the report. Bar Counsel excepts to the failure to find violation of Disciplinary Rules 2–106, 5–101 and 7–101. Bar Counsel has not excepted to the failure to find a violation of DR 1–102.

In setting forth the facts of this matter, we shall supplement material contained in the stipulation of counsel with additional facts from the transcript of proceedings before the inquiry panel. We do so because Respondents acknowledge that the transcript was provided to Judge Jacobson for his consideration. The stipulation of facts was apparently a courtesy to Judge Jacobson and not a limitation on the facts available for his consideration and for our review. Further, Judge Jacobson had no opportunity to evaluate the demeanor and credibility of fact witnesses.

Respondents' client was Frank Getson (Getson). Getson's formal education ended during the tenth grade. He was forty years old in March 1989, at the time of the inquiry panel hearing. Perhaps a decade earlier Getson had been employed by an importer of foreign motor vehicles in the port of Baltimore. While driving one of his employer's vehicles, in order to move it from one location to another on a large, open-air, storage area or parking lot, Getson collided with another vehicle owned by his employer and operated

---

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."

by his co-employee, Rose Robinette (Robinette). The arrangement of the lanes on the storage lot was such that Robinette was traveling on the "boulevard" and Getson was traveling on the "unfavored street." Getson has consistently maintained, almost to the point of fixation, that the accident was Robinette's fault. He maintains that his speed was approximately fifteen miles per hour, and that Robinette hit him while she was traveling about sixty miles per hour.

The employer's workers' compensation carrier, Hartford Accident & Indemnity Company (Hartford), paid Robinette a substantial amount in workers' compensation. Robinette then sued Getson for damages for injuries sustained in the motor vehicle accident. Robinette's attorney was William J. Blondell, Jr., Esq. (Blondell). Md.Code (1957, 1985 Repl. Vol.), Art. 101, § 58 in general requires a worker to reimburse the insurer, out of any recovery in a third party action, the workers' compensation paid to the worker. The parties have referred to Hartford's interest in any recovery by Robinette from Getson as the compensation "lien" or as Hartford's subrogation interest. It appears that Hartford did not employ its own counsel, in addition to Robinette's counsel, Blondell, to protect its subrogation interest in the action against Getson. Thus, Blondell would ordinarily be entitled to a fee from Hartford, based on the amount recovered by Hartford in Robinette's (and Hartford's) action against Getson. *See Collins v. United Pacific Ins. Co.*, 315 Md. 141, 553 A.2d 707 (1989).

Getson had no automobile liability insurance. He engaged William Littleton, Esq. to represent him but a default judgment was entered against Getson. After an inquisition, which Getson apparently attended unrepresented, damages were fixed at $73,000.

Getson thereafter, on the recommendation of his then wife, consulted with Knust. At that time, and until January 1, 1985, Knust practiced in partnership with Harlan. Knust maintained an office in Ellicott City, while Harlan maintained an office in Baltimore City. Respondents under-

took to represent Getson in a claim against Littleton for legal malpractice. A written retainer and fee agreement, dated January 21, 1983, was executed. It provided for a contingent fee of fifty percent, apparently to be calculated on the gross recovery.[2] The action against Littleton required proving that he had failed competently to represent Getson and that, had the duty been performed competently, the result of the Robinette case would have been favorable to Getson.

At some time in 1984 a representative of Hartford, Sandy Kelly, learned, quite possibly from Blondell, that Knust was representing Getson. She telephoned Knust, authorized Respondents to protect Hartford's interest, and authorized an attorney's fee to Respondents with respect to any sums recovered. Knust replied that he would have to discuss the proposal with Harlan. Knust sent Harlan a memorandum describing the conversation, but Respondents did not then accept the proposal. Nor did they discuss it until after Getson's action against Littleton produced a recovery.

Harlan became more active in representing Getson as discovery was undertaken, and he was clearly lead counsel. Hartford had conducted an investigation of the Robinette–Getson accident, and Harlan obtained from Hartford the report of that investigation. The stipulation says that "Hartford's investigative report was crucial to the success of Mr. Getson's claim against Mr. Littleton," but it does not explain how the report was "crucial." [3]

---

**2.** The exhibits that were introduced at the inquiry panel hearing were not introduced before Judge Jacobson, with the exception of the settlement sheet which is attached to this opinion as Appendix A.

**3.** Nor does the record before the inquiry panel explain precisely how this report was "crucial." A custodian of Hartford's investigation file, who had no personal knowledge of the investigation, produced that file at the Getson v. Littleton trial. It appears that portions of the file which were not conclusory were admitted. Harlan also testified that, during the Littleton trial, Getson for the first time told Harlan of an eyewitness whose testimony produced some evidence of contributory negligence on Robinette's part. (Counsel for the malpractice carrier apparently did not file interrogatories requesting the identity of wit-

Sometime in the fall of 1985, Getson's action against Littleton was tried to a jury presided over by Judge Joseph F. Murphy, Jr. in the Circuit Court for Baltimore County. Judge Murphy, testifying for the Respondents in this disciplinary proceeding before Judge Jacobson, said that the action against Littleton

> "was a difficult case for [Getson] because [Littleton] raised two defenses, one, he was only hired to enter his appearance, and the understanding with [Getson] was that [Littleton] would do nothing else and [Getson] would get somebody else involved in the case, and, second, that if Clarence Darrow had come back from the dead to try the case [of Robinette v. Getson] the results would have been the same."

The jury returned a verdict in favor of Getson against Littleton for $150,000. The highest offer had been $10,000. There were post judgment motions which were denied. There was no appeal.

Respondents fully expected that Blondell, as counsel for Robinette (and necessarily Hartford), would lay a garnishment in their hands to seize funds received from Littleton's legal malpractice carrier in satisfaction of the judgment. Respondents caused an associate attorney in their firm to research whether a garnishment would be limited to the net recovery after their fee and expenses. The garnishment was not laid until January 22, 1986.

On January 15, 1986, Respondents made distribution to Getson as set forth on a settlement sheet, a copy of which is attached as Appendix A to this opinion. The meeting lasted approximately two hours. Getson attended with his then wife whom Respondents describe. as more sophisticated than Getson. She assisted in explaining the distribution

---

nesses.) Finally, Harlan had obtained diagrams which Robinette had made for her counsel which Harlan utilized to cast some doubt on Robinette's credibility in cross-examination.

and options to Getson.[4]  Respondents explained to Getson that the Robinette judgment was outstanding against him and that they anticipated that Getson would be pursued for collection of it.  Getson adamantly refused to permit any portion of the recovery to be disbursed to Robinette whom he insisted was responsible for the accident.  In the settlement sheet Getson authorized Respondents "to pay to [Hartford] the sum of $52,588.85 representing the full amount of the workmen's compensation lien in the case of *Robinette v. Getson.*"[5]  The settlement sheet further recites that Getson "had authorized this because of the necessity for the assistance and appearance during trial of [Hartford's] agents and employees which acts of cooperation were necessary to the successful prosecution of [Getson's] case against Mr. Littleton."[6]

---

**4.** Getson and his wife were later divorced.  She is said to reside somewhere in Texas.  She was not a witness in these disciplinary proceedings.

**5.** The record does not make clear the original, principal amount of workers' compensation paid by Hartford to Robinette, or whether $52,588.85 includes full interest on Hartford's portion of the judgment from the date of judgment.

**6.** Three years and two months later, before the inquiry panel, Getson's attention was directed to the $52,588.85 disbursement on the settlement sheet.  He explained: "That's the money that, I guess, was owed to The Hartford Insurance Company."  It was paid to them "[b]ecause it was better to them than to her [Robinette]."  Getson testified he read and understood the explanatory statement *at the bottom of the* settlement sheet.  He agreed to pay Hartford because he "figured if [he] had to pay someone, it was the insurance company that lost out of all."  Assistant bar counsel's direct examination of Getson at the inquiry panel concluded as follows:

"[ASSISTANT BAR COUNSEL]: And I believe you testified before, but I want to ask you once more, were you told at any time that you need not pay the money to The Hartford[ ]?

"MR. GETSON: Not The Hartford.  I thought I was told it had a lien on it, it says on the paper.

"[ASSISTANT BAR COUNSEL]: It says on this paper here that there's a lien on it.  But that was a lien against Mrs. Robinette, I guess, here.  Did you understand that?

"MR. GETSON: Not at the time."

By letter dated January 20, 1986, Harlan wrote to a Mr. Rich at Hartford. The first paragraph of that letter includes the following: "Pursuant to the agreement made between Jac Knust, formerly of our office."[7] Harlan acknowledged that the reference to an agreement relates to the telephone contact by Hartford in 1984. He said that his characterization of the legal relationship was mistaken because Hartford's offer of employment had never been accepted.

In the letter Harlan advised Hartford that he was authorized to pay the subrogation interest in the Robinette judgment in full, and he suggested a one-third "fee" ($17,529.62) to Respondents. The mechanics of the disbursement were to enclose to Hartford a check for $35,059.23 (two-thirds of $52,588.85), by the acceptance of which Hartford would agree to the one-third "fee." This cleared two-thirds of Getson's balance out of the Respondents' escrow account and protected at least that much from the anticipated garnishment.[8]

Each of the Respondents admits that Getson knew nothing of the "fee" from Hartford. Harlan testified that his thinking at the time was that the "fee" from Hartford "wouldn't have made any difference to [Getson] one way or the other." Harlan "didn't think that there was any harm to Mr. Getson as to whether or not we were able to get $1.00, no dollar, seventeen thousand dollars ($17,000.00). It didn't affect him in any way, shape or form." Harlan discussed the proposed "fee" from Hartford with Knust. Knust guesses that he and Harlan "were thinking it was our efforts that produced the result here...."

---

7. As noted above, n. 2, the exhibits are not in the record. Only the quoted words were read into the transcript record of the inquiry panel proceedings.

8. It would also have been consistent with avoiding garnishment for Respondents to have taken the balance of Getson's funds into income at the same time, in anticipation of Hartford's approval of the "fee," but the record does not affirmatively reveal this.

Getson first learned from Blondell, or one of Blondell's associates, that Hartford had paid a "fee" to Respondents. Getson "felt bad about it," but "[n]ot really [angry]." He "just felt—oh, these lawyers." When Getson learned of the fee, he telephoned Knust who, according to Getson, told Getson that Respondents "knew at the time, but they didn't feel that I should have known about it, whatever."

Blondell enforced the Robinette judgment against Getson by garnishing Getson's wages. Getson again consulted Knust. Knust, for a $750 fee, placed Getson in bankruptcy.

Blondell, in his own name, sued Respondents for the money paid by Hartford, but that case was dismissed on motion. Then, Robinette, represented by Blondell, sued Respondents on the theory that she was a third party beneficiary of the contract between Respondents and Getson relating to prosecution of Getson's claim against Littleton. That action resulted in a jury verdict in favor of the Respondents.

In the actions brought by or through Blondell, Respondents were represented by an associate in Harlan's new law firm, Joseph F. Zauner, III (Zauner). Zauner also represented Respondents before the inquiry panel. Zauner immediately analyzed the matter correctly and advised Respondents that the $17,000 was Getson's money which should be refunded to him.[9] Harlan acknowledged that "it took [him] a while" to recognize that the money should be paid to Getson. He said:

> "I had some discussions with other people that were attorneys, as to the philosophy of whether that was correct or not because, the way that it happened, I thought that we were doing the right thing and, retrospectively, I lost the argument. They said, 'Hey, just look at it from the other perspective.'"

---

9. The parties have referred to the "fee" from Hartford as $17,000 and we shall do the same.

The $17,000 was tendered to Getson's trustee in bankruptcy and was eventually accepted.

Getson never complained to Bar Counsel. The instant matter was precipitated by Blondell's complaint. Bar Counsel's investigation initially focused on Respondents' duties, *vis-a-vis*, Blondell, and eventually the focus of the investigation turned to Respondents' relationship with Getson. The inquiry panel, before which Getson, Harlan and Knust testified, recommended a reprimand. The Review Board directed the filing of charges. See Md.Rule BV7 b.

Bar Counsel's office, exercising prosecutorial discretion, concluded that it could not prove fraud by clear and convincing evidence using Getson as an essential witness. Indeed, Bar Counsel's office seemingly concluded that there was no fraud. Consequently, the stipulation of facts furnished to Judge Jacobson makes no mention of the memorandum of Knust's 1984 telephone conversation with Sandy Kelly of Hartford. Nor does the stipulation refer to Harlan's January 20, 1986, letter to Hartford in which he speaks of a pre-existing agreement. Similarly, Bar Counsel has not excepted to the finding that there was no violation of DR 1–102(A)(4).

In the present posture of the case, the core facts are these. Respondents were authorized by their client to disburse to Hartford $52,588.85 of client funds in order fully to satisfy Hartford's interest in the Robinette judgment. Respondents were able to negotiate to $35,059.23 the amount to be paid to Hartford in order to obtain one hundred percent satisfaction of Hartford's interest in the judgment. Respondents kept the saving of $17,529.62. That saving was their client's money.

Respondents never represented Hartford. Thus, there is no violation of DR 5–101(A). Bar Counsel's exception as to DR 5–101(A) is denied.

Respondents' alleged failure zealously to represent their client relates to the abandonment of their client's interest when carrying out Getson's instructions to disburse to

Hartford. Rather than negotiate a reduction in the amount required to satisfy Hartford's interest in the judgment for Getson's account, Respondents negotiated that reduction intending it to be for their own account. Bar Counsel's exception is granted as to DR 7–101(A)(1) and (3).

Bar Counsel's exception addressed to the failure to find that Respondents had collected a clearly excessive fee in violation of DR 2–106(A) is also granted.[10] Because all of the work that had produced the funds used to satisfy Hartford's subrogation interest was work done by Respondents for Getson under the fifty percent fee agreement, and because the saving effected in satisfying Hartford's interest in the judgment against Getson was a saving realized, in law, for Getson's account, the most charitable characterization of Respondents' retention of the $17,529.62 is as an additional fee to Respondents from Getson. That additional fee exceeds the fee agreement by 22.66% without the knowledge or consent of the client.

Counsel representing Respondents in this Court argues that "[u]nder the unique circumstances here, Respondents reasonably could have believed that at the time they turned their attention to the matter of any fee from The Hartford, they had fulfilled their obligations to Getson by the manner in which the monies were disbursed." We disagree. It is clear that Respondents' conduct was unethical. *See* Mary-

---

**10.** The events with which we are concerned here took place well prior to our opinion in *Attorney Grievance Comm'n v. Korotki,* 318 Md. 646, 569 A.2d 1224 (1990). There we sent a clear warning to the bar that "it is generally a violation of the rule for the attorney's stake in the result to exceed the client's stake." *Id.* at 665, 569 A.2d at 1233.

We note that the contingent fee agreement in the instant matter called for a fifty percent fee calculated on the gross recovery, *i.e.,* all of the expenses of the litigation were to be borne by the client. Even if we assume, *arguendo,* that a fifty percent contingent fee on the net recovery in the instant matter was within the range of reasonableness, it would seem that the Respondents would have acquired a greater stake in the litigation than their client, even if the Respondents had charged no more than their agreement provided.

This analysis played no part in Bar Counsel's proof of the charges in the instant matter, and we do not rest our finding of violation in any way on the face of the fee agreement.

land State Bar Ass'n, Inc., Committee on Ethics (MSBA) Docket 78–24 (March 10, 1978) (plaintiff's attorney in personal injury case who disbursed to subrogated health insurer amount of benefits paid and who received a fee from that subrogee must credit that fee to client); MSBA Docket 77–65 (May 13, 1977) (plaintiff's attorney in personal injury case cannot collect, for a fee from health care provider, the charges for that provider's services rendered to attorney's client); MSBA Docket 71–13 (undated) (where creditor's attorney collects a legal fee from debtor, per provisions of promissory note, that fee must be credited against any fee payable by creditor).

In *Attorney Grievance Comm'n v. Korotki*, 318 Md. 646, 569 A.2d 1224 (1990), a case of clearly excessive fees, we suspended the attorney for eighteen months. The amounts that Korotki sought to extract from his clients, over and above that to which they had agreed, far exceeded the $17,000 involved here. On the other hand, Korotki was blatantly open in his demands, whereas the Respondents attempted to enhance their remuneration without their client's knowledge. We view this aspect of the case as particularly serious. Mitigating the violation is the fact that, once the Respondents brought themselves to recognize the validity of Zauner's analysis of their ethical obligations, they refunded the money for Getson's account and freely acknowledged Getson's entitlement to the money before the inquiry panel.

Under all of the circumstances the appropriate sanction is a suspension for six months.

Joseph Benson Harlan and Jac Edward Knust shall stand suspended from the practice of law in this State for a period of six months beginning thirty days from the date of the filing of this opinion. They shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

IT IS SO ORDERED; RESPONDENTS SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS

COURT, INCLUDING THE COSTS OF ALL TRAN-
SCRIPTS, PURSUANT TO MARYLAND RULE BV15 c
FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR
OF THE ATTORNEY GRIEVANCE COMMISSION
AGAINST JOSEPH BENSON HARLAN AND JAC ED-
WARD KNUST.

APPENDIX A

(Letterhead Omitted)

FULL AND FINAL SETTLEMENT
GETSON V. LITTLETON

January 15, 1986

| | | |
|---|---:|---:|
| Judgment— | | $150,000.00 |
| | | |
| Expenses: | | |
|   Attorneys' fee (contract 1/21/83)— | $75,000.00 | |
|   Lien of Hartford Ins. Co.— | 52,588.85 | |
|   Expert witness (Judge Grady)— | 970.00 | |
|   Deposition costs: | | |
|     11/13/85— | 55.00 | |
|     11/4/85— | 28.60 | |
|     1/9/85— | 80.29 | |
|     4/16/85— | 55.00 | |
|     11/7/85— | 29.70 | |
|   Duplicating expenses— | 76.20 | |
|   Private Process expenses— | 65.00 | |
|   Delivery Services— | 30.00 | |
| Total Expenses: | | 128,978.64 |
| Net due Client— | | $ 21,021.36 |

I have read and fully understand and agree to the above
settlement in the case of *Getson v. Littleton.* I understand
that the judgment against me from the case of *Robinette v.
Getson* has not been extinguished, paid or satisfied out of
the proceeds of this judgment with the following exception.
I have authorized my attorneys to pay to the Hartford
Insurance Company the sum of $52,588.85 representing the
full amount of the workmen's compensation lien in the case
of *Robinette v. Getson.* I had authorized this because of
the necessity for the assistance and appearance during trial

of their agents and employees which acts of cooperation were necessary to the successful prosecution of my case against Mr. Littleton. It is my express wish and desire that my attorneys not pay any monies to any other parties in satisfaction of the judgment in the case of *Robinette v. Getson*. I understand that I may and probably will continue to be liable under that judgment aforesaid. In addition I certify that I am completely and totally satisfied with the representation in the case by ... Joseph B. Harlan [and] Jac E. Knust....

/s/_____
Frank Getson